WILL OF MARTIN: GILLETTE and another, Appellants, vs. LA CROSSE TRUST COMPANY, Executor, Respondent.

*September 13—October 16, 1945.*

For the appellants there was a brief by *Lees & Bunge,* and oral argument by *Otto O. Marquardt,* all of La Crosse.
*Cameron L. Baldwin* of La Crosse, for the respondent.

WICKHEM, J.   This appeal involves the proper construction of a will and the following provisions of the will are necessary to an understanding of the points involved.

"Second: I give, devise, and bequeath to my children, Louis H. Martin, Jr., Miriam J. Hurtgen and Jean E. Gillette, as trustees, all of my estate, both real and personal wheresoever situated, and in trust for the period of ten (10) years from and after the date of my death, for the following uses and purposes:
"(a) My said trustees shall pay to my daughter, Miriam J. Hurtgen, the sum of two hundred dollars ($200) per month, from principal and interest, or either or both, during the balance of her lifetime; or until the said trust fund is wholly distributed; or until the time limited for said trust, as herein fixed, shall expire."
(b) Identical provisions for Jean E. Gillette.
(c) Identical provisions for Louis H. Martin, Jr.
"Third: If, at the time of the death of either of my said children to whom my estate is distributed as aforesaid, any portion of said trust fund remains undistributed, it is my desire that the portion provided for said deceased child shall descend to and be divided among the heirs of the body of said deceased child, provided, however, that the said trust shall be extended as to the said heirs of the body of my said child until such time as the said heirs of the body of said deceased child shall each reach the age of twenty-five years, at which time the portion of my estate distributable to said heir shall be paid over and said trust shall, as to such portion of my estate, cease and terminate."

Louis H. Martin, Sr., died on March 7, 1939, and his will was duly admitted to probate. Lewis H. Martin, Jr., Miriam J. Hurtgen, and Jean E. Gillette, survived the testator.   Lewis H. Martin, Jr., died without issue on October 20,

1944, leaving his entire estate to Norma Jean Gillette, Norman L. Gillette, Jr., Robert Hurtgen, and Peter Hurtgen, in equal shares, subject to certain trusts.

The trust company as executor of the will of Lewis H. Martin, Jr., claimed a one-third interest in the estate of Louis H. Martin, Sr., for the benefit of the legatees of Lewis H. Martin, Jr. Specifically, the trust company claimed to be entitled to payments of $200 per month during the life of the trust and an equal share in the residue upon the termination of the trust. The trial court held, (1) that all of the property of Louis H. Martin, Sr., passed by the terms of his will and vested in his three children; (2) that the trust was for the benefit of the estate of testator, and that it was his intent that his three children each take a vested interest at the time of his death in the payments provided for in the trust, and in whatever residue should exist when the trust terminated by the ten-year limitation.

Appellants contend that Lewis H. Martin, Jr., had no vested interest either in the payments provided by the trust fund or in the residue.

As it appears to us, the first question is whether it was the intention of testator to vest Lewis H. Martin, Jr., with any interest in the trust fund which survived the latter's death without issue. We hold that the will evidences a contrary intention. A single trust fund was set up by the will and it was entirely committed to secure payments of $200 a month to each of the three children of testator. It was the plainly evidenced intention of the testator that these payments be made for a period not longer than ten years and then only if the trust fund was not sooner exhausted. Subject to these limitations, the payments were to be made to a particular *cestui* only during his or her life, the corpus of the trust fund being retained to provide payments to the survivors during the balance of the ten-year period. In other words, payments were to be made to a particular *cestui* only during his life or during

the ten-year period or until the exhaustion of the trust fund, whichever period was the shortest, the balance of the trust fund remaining as a source for such payments as were still to be made under the provisions of the trust. The only exception to this is that specified by the testator in paragraph "third" and by familiar rules of construction, other exceptions should be taken not to have been intended by the testator.

By the terms of paragraph "third" it is provided that if one of the *cestuis* dies during the period of the trust leaving heirs of the body the latter are to receive the $200 payments from the trust until the said "heirs of the body of said deceased child shall each reach the age of twenty-five years, at which time the portion of my estate distributable to said heir shall be paid over and the trust shall, as to such portion of my estate, cease and terminate." Another provision of paragraph "third" extends the period of the trust until the heirs of the body arrived at the age of twenty-five years.

In our opinion, paragraph "third" makes two things clear. It prescribes the only specific distribution of the $200 a month share of a *cestui* who dies during the period of the trust, and it fortifies a conclusion independently reached by reading paragraph "second" that the trust fund otherwise terminates as to each *cestui* upon his death. It confirms the conclusion reached by a casual reading of the will that testator was interested in having all his property disposed of by the will for the equal benefit of his three children and the heirs of their bodies. From this we conclude that Lewis H. Martin, Jr., had no vested interest in the payments secured by the trust fund and that having died without heirs of his body his interest in the trust fund wholly and completely terminated.

Paragraph "third" is of further significance in indicating by implication that such portions of the trust fund as remain at the termination of the trust are intended to be distributed to the beneficiaries under the trust who survive the trust period. See *Lawrence v. Barber,* 116 Wis. 294, 93 N. W. 30;

*Estate of Sherburn S. Merrill,* 196 Wis. 357, 220 N. W. 383; *Will of Ehlers,* 155 Wis. 46, 143 N. W. 1050. This conclusion is grounded in part upon conclusions stated earlier in the opinion that the interest of a particular legatee in the trust fund was intended to terminate upon his death without issue and the balance of the trust fund held to secure payments to the surviving beneficiary. Both interest and principal of the trust fund were committed to this purpose and this gives support to the conclusion that survival until the termination of the trust was a condition precedent to the taking of any part of the residue. Again, the only exception was the death of a *cestui* leaving heirs of his body and upon that contingency happening there was to be a distribution of the residue to such heir when and if (another contingency) he arrived at the age of twenty-five years.

Respondent cites *Will of Reimers,* 242 Wis. 233, 235, 7 N. W. (2d) 857, as holding contrary to this conclusion. There the provisions of the will were quite different. The provisions of the Reimers will gave to testator's wife all of his property for life and empowered the wife to sell or to dispose of any of the property and to conduct the business in which he was engaged at the time of making the will. It also provided "Upon the death of my wife, my estate or the remainder thereof, of whatever kind, shall descend in equal and undivided shares unto my children [naming them], to them and their heirs forever, the child or children of any deceased child to have the share or portion which his or her parents would have taken if living." This court held that there was a vested remainder in a child who died during the period of the mother's life estate. The court in *Will of Reimers, supra,* surveys the authority on the subject of vested and contingent remainders, and we see no purpose in repeating here what was so well said in that case. The court there considered that the clause in question simply postponed the enjoyment and applied the rule in *Will of Roth,* 191 Wis. 366, 371, 210 N. W.

826, that "where a future gift is postponed in order to let in some other interest or, as it is sometimes expressed, for the benefit of the estate, the gift is vested although the enjoyment is postponed."

The *Reimers Case, supra,* presented an entirely different situation. There there was an express disposition of the remainder and the case turns on the language by which the remainder was given. Here the gift of the residue after the period of the trust is almost entirely a matter of construction and implication and a very evident purpose of the will was to provide a single trust fund for the benefit of named legatees so long as the funds lasted or they lived or the period of the trust did not run out. Starting with this premise, and adverting to considerations hereinbefore discussed, we are satisfied that the interest of the legatees in the residue is precisely as contingent upon survival as their interest in the trust fund during the life of the trust.

From the foregoing it follows that the judgment must be reversed.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.